UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| OBADIAH JOEL LACKEY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:10 CV 64 |
| TOWN OF GRIFFITH and DOLLAR TREE STORES, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Defendants the Town of Griffith, Paul Stines, James Sibley, and Todd Dawes have moved for summary judgment on plaintiff Obadiah Lackey's complaint. (DE # 52.) For the following reasons, that motion is granted in part and denied in part.

**I. Facts and Procedural History**

The following facts[1] are not genuinely disputed.[2] Plaintiff is a resident of East Chicago, Indiana. Defendants Stines, Sibley, and Dawes are all police officers for defendant Town of Griffith.

On February 28, 2008, Theresa Delane was an employee at the Dollar Tree store located at 330 West Ridge Road, in Griffith, IN. Ms. Delane was working the cash register the night of February 28, 2008, when, at approximately 9:00 p.m., a man wearing a black leather coat and knit cap walked up to her counter, placed three packs

---

[1] The facts that follow are construed most favorably to plaintiff, the non-moving party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998)..

[2] The undisputed facts have been taken by the parties' statements of material facts. (DE ## 53, 60.)

of batteries on the counter, and told Ms. Delane that he was holding up the store. The man opened his coat to reveal a gun, and told Ms. Delane to give him the money from the cash register. Ms. Delane opened the cash register, and the man reached over the counter to grab the money from inside the register. The man then fled the store.

Two eyewitnesses, Barry Bostick and Trina Harrell, observed the man running out of the store and driving away in a blue Buick Skylark, license plate number 608LAP. Officers Stines, Sibley, and Dawes were then dispatched to the scene. Dispatch described the suspect as black male, six feet tall, weighing 170-190 pounds, and wearing a black leather coat. After arriving at the scene, Officers Stines, Sibley, and Dawes spoke with Ms. Delane, Barry Bostick, and Trina Harrell, obtaining a description of the suspect and information on the car the suspect was driving away from the store. The three packages of batteries were recovered by the responding officers, and Officer Sibley obtained a latent print from one of the packages. He forwarded that print to Indiana State Police Central Records to be identified.

The police then performed a vehicle registration inquiry on the vehicle witnesses described seeing the suspect flee the scene in. The search indicated that the vehicle was registered to Lydia Lackey of 4850 Euclid Avenue in East Chicago, Indiana. Another search reveled that Obadiah Lackey also resided at that same address, and matched the physical description that Ms. Delane had provided the police. At that point, Officers Sibley and Dawes headed toward 4850 Euclid Avenue in East Chicago.

Upon arriving at that address, Officers Sibley and Dawes observed a blue Buick Skylark, license plate number 608LAP, parked in front of the residence. Officer Dawes noticed footprints in the snow leading from that vehicle to the side door of the house located at 4850 Euclid Avenue ("the house"). After knocking on the door of the house, the officers spoke with plaintiff Obadiah Lackey. Plaintiff told officers he had just gotten home from the movies. At that point, the officers accused plaintiff of committing the crime, despite claims from plaintiff and plaintiff's family members that plaintiff was innocent.

The officers asked Charmayne Lackey, the owner of the house, for consent to search the house. She granted that consent. After searching plaintiff's room, the officers recovered a black hooded sweatshirt and a black knit cap from plaintiff's bed. While at the house, Officer Sibley spoke to Marshall Lackey II, plaintiff's uncle. Marshall Lackey II indicated that he lived at the house and had been at the house all day.

The officers then arrested[3] plaintiff and took him to the Griffith Police Department, where he had his picture taken. That picture was then put into a photo lineup with the photographs of five other individuals. The lineup was shown to Ms. Delane, the clerk from the Dollar Tree store, who picked plaintiff out as being the individual from the robbery. Ms. Delane was then shown a second photo lineup, which

---

[3] The parties do not discuss the exact point when plaintiff was arrested. The court will assume that the arrest occurred at this point, when plaintiff was removed from the house, placed in handcuffs, put in the back of a squad car, and taken to the police station. (Defendants' Ex. B at 91, 93-94.)

included a photo of Marshall Lackey II, and five other individuals. Ms. Delane did not identify any of the individuals in the second lineup as the individual involved with the robbery.

On the following day, February 29, 2008, Lake County Deputy Prosecutor Michael Greener prepared a probable cause affidavit and information sheet, which were signed by Greener and Officer Sibley. The probable cause affidavit and information sheet were presented to and approved by a Lake County magistrate judge. Later that day, plaintiff was charged with robbery. The magistrate judge set plaintiff's bail at $40,000.

At some point between March 20, 2008, and March 28, 2008, the results of the fingerprint analysis of the battery packs came back.[4] The fingerprint recovered from the battery pack belonged to Marshall Lackey II. On March 28, 2008, the State of Indiana moved to dismiss the charges against plaintiff, and plaintiff was released from jail. Marshall Lackey II was eventually charged with robbing the Dollar Tree.

As a result of this incident, plaintiff brought suit against the Town of Griffith, Paul Stines, James Sibley, and Todd Dawes[5] (DE # 1) alleging wrongful arrest, false imprisonment, and malicious prosecution. (DE # 59 at 2.) Defendants have now moved for summary judgment. (DE # 52.)

---

[4] The parties dispute the date on which the government received the results. The exact date is irrelevant to the court's analysis.

[5] Plaintiff also brought suit against Dollar Tree, but that claim was resolved out of court. (DE # 68.)

## II. Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

**III. Analysis**

Plaintiff has brought three claims against defendants: wrongful arrest, false imprisonment, and malicious prosecution.[6] (DE # 59 at 2.) Plaintiff brings these claims under "state law and/or 28 U.S.C. § 1983." (*Id.*) Plaintiff alleges that the police officers are liable in their individual and official capacities. The court will begin its analysis with plaintiff's wrongful arrest and false imprisonment claims. For the reasons set out below,

---

[6] In his complaint, plaintiff also states that defendants violated the First Amendment. Plaintiff makes no other mention of this claim, and has not developed any meaningful argument as to this claim.

defendants' motion for summary judgment will be granted as to plaintiff's individual capacity wrongful arrest and false imprisonment claims under Section 1983 and Indiana law, granted as to plaintiff's malicious prosecution claim, and denied as to plaintiff's official capacity claim.

### A. Wrongful Arrest and False Imprisonment

In order for plaintiff to prove his wrongful arrest and false imprisonment claims under Indiana or federal law, plaintiff must show that the police lacked probable cause when they detained him. *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) ("[A] plaintiff may establish both a § 1983 claim and an Indiana false imprisonment claim where his freedom of movement was limited or restrained in some way without probable cause."); *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) ("In order for [plaintiff] to prevail on his § 1983 false arrest claim, he must show that probable cause for his arrest was lacking."); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest [or] false imprisonment . . . ."); *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1104 (S.D. Ind. 2008) ("Generally, to succeed upon a claim of false arrest or false imprisonment, Indiana law requires a plaintiff to establish the absence of probable cause for the arrest."); *Conwell v. Beatty*, 667 N.E.2d 768, 775 (Ind. Ct. App. 1996) ("'[P]roof of the absence of probable cause is essential to the plaintiff's cause of action for false arrest.'" (quoting *Garrett v. City of Bloomington*, 478 N.E.2d 89, 93 (1985))).

In support of their motion for summary judgment, defendants argue that the officers who arrested plaintiff had probable cause to do so and therefore, defendants are entitled to summary judgment on plaintiff's false arrest and false imprisonment claims. (*See* DE # 54 at 3.)[7] In response, plaintiff makes several arguments as to why the defendants lacked probable cause to arrest him. The court will address each argument in turn.

The Seventh Circuit has stated:

> When the question of probable cause arises in a damages suit its resolution typically falls within the province of the jury, though a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.

*Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994); *see also Phelps v. City of Indianapolis*, No. 1:02–CV–1912, 2004 WL 1146489, at *5 (S.D. Ind. May 20, 2004). "[T]he

---

[7] Indiana Code 35-42-5-1 sets out the crime of robbery:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) by using or threatening the use of force on any person; or
>
> (2) by putting any person in fear;
>
> commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

IND. CODE. 35-42-5-1. Plaintiff does not dispute that a robbery took place.

Fourth Amendment permits an officer to make an arrest when he or she has probable cause to believe that an individual has committed or is committing an act which constitutes an offense under state law . . . ." *Tebbens v. Mushol*, 692 F.3d 807, 818 (7th Cir. 2012).

"Police officers have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa*, 442 F.3d at 547 (quoting *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998)). "The court evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Id.* (quoting *Myler,* 149 F.3d at 646)). "Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000); *see also Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999).

Indiana applies the same "prudent person" probable cause analysis. *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) ("Thus, both Indiana and federal law require the court to determine if there was probable cause for arrest, and both base the probable cause determination on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense.") Courts have analyzed the probable

9

cause analysis for wrongful arrest and false imprisonment claims under Indiana law and Section 1983 together, and the court will do the same here. *Fitzpatrick v. City of Ft. Wayne*, No. 1:07–CV–259, 2009 WL 735025, at *5 (N.D. Ind. Mar. 29, 2009); *see also Phelps*, 2004 WL 1146489, at *5*.

Several cases are instructive on the issue of probable cause. In *Pasiewicz v. Lake County Forest Preserve District,* two women riding horses in a park on a Sunday morning spotted a naked man cavorting in the woods. 270 F.3d 520, 522 (7th Cir. 2001). The women reported the incident to a forest preserve officer and gave the officer a rough description of the suspect's physical appearance. *Id.* at 522. The next day, one of the women, while dropping her child off at school, saw a man she believed to be the naked man she had seen the previous day in the park. *Id.* After doing some research, the woman found the man's name and address, and gave the information to the forest preserve police. *Id.* Officers eventually questioned the man at his place of work, asking if he had been at the school the day the woman saw him, which he admitted to. *Id.* The officers, however, did not ask about his whereabouts on the day that the women saw the nude man in the park. *Id.* The officers told the man what he was accused of, but he denied the allegations. *Id.* The officers arrested the man anyway. *Id.*

The man brought suit against the forest service, and the defendants argued that the officers had probable cause to make the arrest. *Id.* at 523. The seventh circuit agreed:

> [Plaintiff] does not dispute (or at least does not seriously dispute) that the naked man, whoever he was, committed a crime of some sort in the [woods]. The question was whether [the plaintiff] was the naked man. With regard to that issue, the officers had credible information to conclude that he was.

10

> Although the officers might have saved a law-abiding citizen considerable tumult by asking more questions or digging deeper into the case, the Fourth Amendment did not require them to do so.

*Id.* at 525.

The facts of *Hill v. California*, 401 U.S. 797 (1971), another case where police arrested someone other than the suspect they originally sought, were summarized by the Seventh Circuit in *United States v. McCauley*:

> Police in that case had received detailed information about a suspect in an armed robbery. When they went to that individual's apartment to arrest him, they encountered a man at that address who acknowledged he was in the suspect's apartment but produced identification with a different name than that of the suspect. The police nevertheless arrested the man who roughly resembled the suspect's description, and, among other things, "denied knowledge of firearms in the apartment although a pistol and loaded ammunition clip were in plain view in the room."

659 F.3d 645, 650-51 (7th Cir. 2011) (citations omitted). Although the police had arrested the wrong man, the Supreme Court still found the arrest was supported by probable cause. *Hill*, 401 U.S. at 803-04. The Supreme Court noted that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id.* at 804.

In *McCauley*, the Seventh Circuit reached the same conclusion in a similar factual situation. In that case, a man reported to police that he had been assaulted by two other men earlier in the night at an apartment complex. *McCauley*, 659 F.3d at 646-47. Although the man did not know the exact address of the apartment complex, he gave the police directions to the complex, and also provided a description of the two men

11

who had assaulted him, including the fact that one of the men was wearing an electronic monitoring bracelet. *Id.* After speaking with another officer, one of the officers that had interviewed the injured man was able to formulate a guess as to the identity of the man wearing the electronic monitoring bracelet. *Id.* at 647. That officer located an address for the man he believed was wearing the bracelet. *Id.* After driving to that address, the police noted that the directions the injured man had given them to the apartment complex accurately led them to the address the officer believed the suspect was located. *Id.*

After arriving at the house, the police knocked on the door, and a man that met the description of one of the two men who had assaulted the injured man answered the door. *Id.* The man who had answered quickly shut and locked the door. *Id.* The police continued knocking until another man, who met the description of the second man who had assaulted the injured man, answered the door. *Id.* After briefly speaking with police, that man closed and locked the door. *Id.* A few minutes later, one of the two men that police recognized as meeting the descriptions of the assaulters left the house and was placed under arrest by police. *Id.* That man, the defendant, argued that the police lacked probable cause to arrest him. *Id.* at 648.

The district court concluded that the police had probable cause to arrest the defendant, and the Seventh Circuit agreed. *Id.* at 648-51. The court noted that the case was similar to the Supreme Court's decision in *Hill* because in both cases "police

responded to a location where they believed a suspect to be, and arrested someone closely resembling the description of the person they were pursuing." *Id.* at 651.

Although the parties do not address the exact point in time plaintiff was arrested, the court will assume that he was arrested when he was handcuffed and taken to the police station in a squad car.[5] Thus, Ms. Delane's identification of plaintiff in the lineup is not relevant to the probable cause analysis. Even without the lineup identification, however, the evidence presented in this case fails to create a question of material fact on whether the officers had probable cause to arrest the plaintiff. Officers Sibley and Dawes had knowledge of facts and circumstances that would lead a reasonable person in that position to believe that plaintiff had committed the crime of robbery. *Mustafa*, 442 F.3d at 547.

In this case, as in *Hill* and *McCauley*, police were provided a description of the suspect, and were also able to identify an address where they believed the suspect was located by running a search of the suspect's license plate. The police also knew that plaintiff, who lived at the address that the car was registered to, matched the physical description of the suspect that a witness had given to police.

Upon arriving at the address the search of the vehicle plate number produced, the police observed a blue Buick Skylark, license plate number 608LAP, parked in front

---

[5] "An arrest occurs 'when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Mushol*, 692 F.3d at 816 (quoting *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003)).

of the residence. Once inside, after receiving consent to search the house, officers found clothing in plaintiff's room that generally matched[6] the description of the clothing witnesses reported the suspect wearing. Finally, plaintiff confirmed that he had just gotten home. Based on the facts presented, no reasonable jury could conclude that the police lacked probable cause to arrest plaintiff.

Plaintiff's arguments to the contrary are not persuasive. First, plaintiff argues that the police ignored his claims and the claims of his family that plaintiff had just gotten home from a movie. Plaintiff also points to the fact that he even produced a ticket stub for the movie. (Defendants' Ex. B at 87.) Once the officers found the clothing in plaintiff's bedroom, they had probable cause to arrest him, and were under no additional duty to investigate plaintiff's movie claim. *Reynolds v. Jamison*, 488 F.3d 756, 768 (7th Cir. 2007); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 744 (7th Cir. 2003). Additionally, although plaintiff's claim that he was at the movies was more than a bald claim of innocence, a ticket stub would not have conclusively established his whereabouts. A stub would only prove that someone had purchased a ticket to that particular movie. *Beauchamp*, 320 F.3d at 744; *see also Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x. 490, 494 (7th Cir. 2011).[7]

---

[6] Officers found a black hooded sweatshirt and knit cap instead of a black leather jacket and knit cap.

[7] Plaintiff also argues that the officers were told to check the video of the concession stand at the movie theater to determine plaintiff's whereabouts. (DE # 59 at 4.) Plaintiff has not directed the court to any evidence that the officers were told to check a tape prior to his arrest. But even if plaintiff had directed the court to such evidence, the police still had probable cause to arrest plaintiff at the time he was

14

Plaintiff also argues that probable cause was lacking in this case because the police could have arrested any black male in that house that was around six feet tall and weighed between 180 and 190 pounds.[8] (DE # 59 at 5.) But plaintiff has not directed the court to any evidence that the only other man in the house, Marshall Lackey, actually met the description of the suspect that police had. Additionally, police found clothes that matched the description of the clothes the suspect was wearing on plaintiff's bed. "And probable cause to arrest requires no more than a reasonable chance—less than a 50 percent likelihood can be sufficient—that a crime occurred and the suspect committed it." *Nelson*, 437 F. App'x. at 493.

Additionally, plaintiff argues that the officers found a black hooded sweatshirt on plaintiff's bed, and not a black leather jacket, which the suspect had been described as wearing. That may be true, but as noted above, probable cause only requires a "reasonable chance—less than a 50 percent likelihood can be sufficient—that a crime occurred and the suspect committed it." *Id.* The officers in this case, like the officers in *McCauley* and *Hill*, "responded to a location where they believed a suspect to be, and arrested someone closely resembling the description of the person they were pursuing." *McCauley*, 659 F.3d at 651.

---

arrested. There is no indication that a tape establishing plaintiff's whereabouts even existed, or would have conclusively established that plaintiff did not commit the crime. The officers were not required to seek that videotape out. "To hold otherwise would put an undue burden on police to ascertain whether a videotape existed prior to making an arrest for an offense committed outside of their presence." *Matthews v. City of East St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012).

[8] The defendant in *McCauley* made a similar argument. 659 F.3d at 649.

Based on the facts presented, no reasonable jury could conclude that the officers in this case lacked probable cause to arrest plaintiff. The officers in this case, like the officers in *Pasiewicz*, might have saved plaintiff, a law-abiding citizen, considerable hardship by investigating further, but they were not required to do so. 270 F.3d at 525. Therefore, Officers Stines, Dawes, and Sibley's motion for summary judgment on plaintiffs' individual capacity wrongful arrest and false imprisonment claims under Section 1983 and Indiana law is granted. *Beauchamp*, 320 F.3d at 746; *see also Mustafa*, 442 F.3d at 547; *McKillip*, 573 F. Supp. 2d at 1104.

### B. Official Capacity

Plaintiff also alleges the Town of Griffith and Stines, Sibley, and Dawes in their official capacities are liable for false imprisonment and wrongful arrest. A section 1983 suit against a police officer employed by a town in his or her official capacity is a suit against the town itself. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011).

"Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (quotations and citations omitted) (emphasis in original).

A plaintiff can establish municipal liability under Section 1983 by producing evidence of:

> "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."

*Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)).

Defendants make no argument about plaintiff's official capacity claims in their motion for summary judgment. Because plaintiff has suffered no constitutional injury, however, he has no claim against the town. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable . . . when there is no underlying constitutional violation by a municipal employee."); *Holm v. Village of Coal City*, 345 F. App'x 187, 191 (7th Cir. 2009); *Alexander v. City of South Bend*, 433 F.3d 550. 557 (7th Cir. 2007). The court realizes that it may grant summary judgment *sua sponte* "only if [it has] given the affected parties advance notice of their intent to do so and a fair opportunity to respond with argument and evidence." *Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012). Therefore, plaintiff is given thirty days from the date of this order in which to file a response detailing why defendants are not entitled to summary judgment on plaintiff's official capacity claim. Plainitff is reminded that this is not an opportunity to revisit old arguments or make new arguments regarding the probable cause issue.

**C. Malicious Prosecution**

Defendants also argue that they are entitled to summary judgment on plaintiff's malicious prosecution claim.[9] (DE # 43 at 8.) To prove a malicious prosecution claim under Indiana law, a plaintiff must prove four elements: "(1) the defendant . . . instituted or caused to be instituted an action against the plaintiff . . . ; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Brown v. Indianapolis Housing Agency*, 971 N.E.2d 181, 186 (Ind. Ct. App. 2012) (citation omitted). "Malice may be inferred from a total lack of probable cause, the failure to make a reasonable or suitable inquiry, or a showing of personal animosity." *Id.*

As defendants note in their brief in support of their motion for summary judgment (DE # 54 at 5), it is not clear under Indiana law whether the officers' investigation and arrest in this case constitutes the institution of a criminal prosecution. *Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996). Defendants, however, also argue that they are entitled to summary judgment on plaintiff's malicious prosecution claim because the officers had probable cause to arrest plaintiff in this case. (DE # 54 at 8.) As noted above, no reasonable jury could conclude that the officers lacked probable cause in this case. Therefore, plaintiff cannot establish an essential element of his malicious prosecution claim, and defendants are entitled to summary judgment on that claim.

---

[9] Plaintiff's malicious prosecution claim can only be brought under Indiana law. *Kim v. Ritter,* No. 12–1547, 2012 WL 4373342, at *2 (7th Cir. Sept. 26, 2012).

## IV. Conclusion

For the foregoing reasons:

1. Defendants the Town of Griffith, Paul Stines, Todd Dawes, and James Sibley's motion for summary judgment (DE # 52) is **GRANTED** as it relates to plaintiff Obadiah Lackey's wrongful arrest and false imprisonment claims against Officers Stines, Dawes, and Sibley in their individual capacity.

2. Defendants the Town of Griffith, Paul Stines, Todd Dawes, and James Sibley's motion for summary judgment (DE # 52) is **DENIED** as it relates to plaintiff Obadiah Lackey's Section 1983 official capacity claim. But, as discussed above, the court will *sua sponte* grant summary judgment on that claim unless, within 30 days of the date of this order, plaintiff provides sufficient reason why summary judgment is not appropriate on that claim.

3. Defendants the Town of Griffith, Paul Stines, Todd Dawes, and James Sibley's motion for summary judgment (DE # 52) is **GRANTED** as it relates to plaintiff Obadiah Lackey's malicious prosecution claim.

4. The court will delay ruling on defendants the Town of Griffith, Paul Stines, Todd Dawes, and James Sibley's motion to strike (DE # 65) until it rules on plaintiff's official capacity claim.

**SO ORDERED.**

Date: November 5, 2012

                                       s/James T. Moody
                                       JUDGE JAMES T. MOODY
                                       UNITED STATES DISTRICT COURT